WINSLOW ENGINEERING AND MANUFACTURING COMPANY, a corporation, Plaintiff,

v.

C. H. BULL CO., a partnership et al., Defendants.

J. A. BALDWIN MANUFACTURING COMPANY, a corporation, Counter-Plaintiff,

v.

WINSLOW ENGINEERING AND MANUFACTURING COMPANY, a corporation, Counter-Defendant.

No. 41458.

United States District Court
N. D. California, S. D.

Nov. 23, 1965.

**48**

Owen, Wickersham & Erickson, San Francisco, Cal., for plaintiff.

Carl Hoppe, San Francisco, Cal., M. K. Hobbs, Winter Park, Fla., and William E. Lucas, Chicago, Ill., for defendants.

## MEMORANDUM OF DECISION

SWEIGERT, District Judge

This is an action under 28 U.S.C. Sec. 1338(a) by Winslow Engineering and Manufacturing Company against C. H. Bull Company for infringement of U. S. Patent No. 2,559,267 issued to Charles A. Winslow, et al., July 3, 1951 upon an application filed September 16, 1946. Defendant has counterclaimed for a declaratory judgment under 28 U.S.C. Sec. 2201 that the Winslow patent is invalid.

Pursuant to prior order of the Court a separate trial has been held upon the defenses of public use and on sale under 35 U.S.C. Sec. 102(b). The critical date with respect to the alleged prior use is September 16, 1945.

In accordance with the pre-trial order filed herein May 28, 1965, the following are agreed facts:

(1) Plaintiff, Winslow Engineering and Manufacturing Company, at the time of filing this action was a California corporation engaged in the business of manufacturing oil filters at its regular and established place of business in Redwood City, California.

(2) Since the filing of the Complaint herein said Winslow Engineering and Manufacturing Company has been acquired by and merged with Maremont Corporation, an Illinois corporation, and the Winslow, et al., patent in suit has been duly assigned to said Maremont Corporation which has been substituted as plaintiff and counter-defendant in a First Amended Complaint without prejudice to any right which the defendant counter-plaintiff has or may have against plaintiff Winslow Engineering and Manufacturing Company.

(3) Mr. J. A. Baldwin organized the J. A. Baldwin Company for manufacturing automobile filter elements in Spooner, Wisconsin during the latter part of 1935.

(4) The J. A. Baldwin Company moved from Spooner, Wisconsin to Eau Claire sometime in 1940.

(5) Mr. J. A. Baldwin is presently the president of the J. A. Baldwin Manufacturing Company which is engaged in the manufacture of oil filters in Kearney, Nebraska and which is a defendant counter-plaintiff in this action.

(6) Filter housings having all the structural details recited in any of the claims were well known and in public use prior to the alleged invention of the patent in suit.

(7) More than one year prior to the date of the alleged invention of the patent in suit, Winslow Engineering Company manufactured and sold filter housings (for use in the lubrication system of an automobile engine) which corresponded in all details to the filter housing recited in the claims of the Winslow patent in suit.

(8) Filtering units having a housing with a single inlet opening and a single outlet opening and further having a by-pass in one end of the housing were manufactured and sold by the Winslow Engineering Company more than one

year prior to the alleged invention of the patent in suit.

The patent in suit is for an oil filter, and more particularly, for an oil filter used to remove grit, sludge, and other impurities from lubricating oil in internal combustion engines.

There are two general types of oil filters in use. In the so-called "by-pass system," a *portion* of the lubricating oil, flowing under pressure from the oil pump to the engine bearings, is led off to a filter unit. This portion of the oil flows through the filter, is cleaned, and the clean oil then flows from the filter outlet into the lubricating oil sump (in the case of an automobile engine, into the crankcase) where it mixes with the balance of the engine oil.

In the so-called "full-flow system," *all* the lubricating oil, under pressure, passes through the filter. The oil is cleaned in passing through the filter and only filtered oil flows from the filter to the engine bearings.

Full-flow oil filters were first placed in general use on automobiles in 1946 on Chrysler cars. Virtually all automobiles manufactured in the United States now have full-flow oil filters installed as original equipment. Prior to 1942, if an automobile manufactured in the United States had an oil filter at all, it had a by-pass filter.

An oil filter consists, generally, of a housing, a tight fitting cover, and a filter element. The filtering element contains the medium or media through which the oil flows for cleaning. The filter has an inlet and an outlet for the oil. If the filter is to be used in a "full-flow system," the filter also has a by-pass valve at one end of the housing. The by-pass valve is essential to proper lubrication of the engine, for, if the filter element becomes clogged, oil will be able to pass through the by-pass valve so that the engine bearings will continue to be lubricated. This is also true when the lubricating oil is so cold and viscous that the oil will not pass easily through the filter element. An increase in oil pressure results. The by-pass valve then opens to permit the cold lubricating oil to pass to the bearings until the oil and element have been warmed by engine heat.

In the by-pass system, since only a portion of the lubricating oil is filtered, no by-pass valve is required for safe operation of the engine.

The evidence shows that defendant J. A. Baldwin Company manufactured filter elements with a filtering medium made only of cotton waste from the latter part of 1935 until some time in 1937. Then, in order to overcome the problem of oil leaking from the joint between the filter housing and cover—a problem which had developed in the use of its Model D–7 filter during winter months— the company started to manufacture filter elements having two media—cotton waste packed into one end of the element and jute fibers packed into the other end.

The evidence shows that this dual-medium (cotton waste and jute fibers) filter element was manufactured by the J. A. Baldwin Company for a period of approximately 18 months—from some time in 1937 until some time in 1939. This is shown by the testimony of Ronald Scalzo who was employed by the J. A. Baldwin Company in Spooner, Wisconsin, from 1937 until the spring of 1939, in various jobs, including the packing of these filter elements. Scalzo testified that from 3 to 5 months after he began working for Baldwin (in 1937) until the spring of 1939, when he left Baldwin, Model D–7 filter elements packed with both cotton waste and jute were manufactured on a production basis. This testimony was corroborated by the witness Mattson, who testified that he sold these dual-medium filter elements in 1937 and 1938, and the witness Giese who testified that these dual-medium elements were manufactured until the summer of 1939. J. A. Baldwin testified that filter elements having jute fibers packed at one end and cotton waste at the other were manufactured by his company from the fall of 1936 or 1937 until

the summer of 1938. The witness Scalzo was able to relate the continued production of dual-medium filter elements to the date he left the employ of the J. A. Baldwin Company in the spring of 1939.

J. A. Baldwin further testified that the reason for switching from elements having only cotton waste as the filtering medium to elements having jute at one end was to eliminate oil leakage from the Baldwin Model D–7 filter which had been introduced in the fall of 1937. (Defs. Ex. B–2A, B–2B, B–2C & B–2D). Leakage occurred during the winter months when the engine oil was cold and viscous. The failure of oil to pass through the filtering medium resulted in a pressure build-up in the filter with consequent leakage. The coarse medium (the jute) permitted cold oil to flow through the filter until the oil was sufficiently warmed from engine heat to pass through the finer cotton waste.

Another witness, Maurice Costello, testified by deposition that his father had helped promote and finance the J. A. Baldwin Company and that he, Costello, had regular access to the plant and all its facilities. He testified that he personally knew of the use of dual filtering media—jute and cotton waste—in the filter elements and that he had watched the elements being made. He further testified that the jute—the "dark" material—was used to obtain better flow, to control leakage, and that, when the filter element was replaced on his 1937 Chevrolet, he made certain that the Baldwin element, taken from the shelf in the service station contained "a different color cotton," i. e., the jute in one end.

Although the witness Gore testified that only cotton waste was used to pack the filter elements when he started working for the J. A. Baldwin Company in October or November of 1939, he also testified that he saw elements in stock at that time which had jute at one end and cotton waste at the other. He also saw bales of jute in stock in the basement in addition to the large bales of cotton waste. The witness Barrickman,

whose deposition testimony was introduced in rebuttal, was employed by the J. A. Baldwin Company in October, 1939. He agreed with Gore that only cotton waste was used to pack elements but testified that he did not see any bales of jute on the premises and was not sure that he ever saw any two medium elements in stock at that time. His duties, however, were primarily concerned with the filter housing and he had little to do with the packing of elements.

Defendants introduced into evidence two filter elements which, according to the testimony, were manufactured and sold during the period when dual-medium elements were manufactured by the J. A. Baldwin Company in Spooner, Wisconsin, or shortly thereafter.

F. L. Sankot testified by deposition. In the years 1937 to 1940 he was proprietor of an auto parts store and garage in Vinton, Iowa. The manufacturer's representative, representing J. A. Baldwin Company in the area, was one Jerry "Spray". After some persuasion, Sankot ordered Baldwin filters and elements and used them regularly. Sankot remembered the problem of oil leaking from the filter during the winter months and that the filter elements received from Baldwin had jute in one end and cotton waste in the other. The witness testified he knew this because he had personally taken apart two elements in order to be convinced that the elements actually contained two different filtering media.

Sankot found an invoice (Ex. F) from Baldwin which included a Model D–7 element mounted on a display stand. This invoice was paid February 10, 1940. The element mounted on the display stand survived to the present, and was introduced into evidence as Ex. B–4–A and B–4–B.

Gus Yelinek, Senior Product Engineer for Deluxe Products Corporation has been involved with filters and filter elements for over 30 years. Testifying as a fact witness and also as one skilled in the filter art, he related that in approximately 1937–1938 he became aware

of filter elements with two media. Salesmen for his company had instructions to send in anything new in the filter field. Some Baldwin filters were sent in (the witness identified them as the same as Ex. B–2–A, B–2–B, B–2–C, and B–2–D). These filters were tested for efficiency, visual comparisons were made, and one element, the same as Ex. B–2–D, was taken apart. Yelinek testified that this element was packed with two different filtering media, cotton at one end, jute at the other.

After a test was run of the complete Baldwin filter, the filter was cleaned, a new Baldwin element installed and the filter put away. In 1952 these stored filters were moved to Racine, Wisconsin. In 1961, when the storage area was being cleaned, Yelinek found the Baldwin filter. He wrote a letter (Ex. B–3–A) to J. A. Baldwin, because he felt that J. A. Baldwin would want to have one of the early Baldwin filters. This filter was sent to Baldwin and is in evidence as Ex. B–2–A, B–2–B, B–2–C and B–2–D.

The evidence is clear and convincing that filters, incorporating filter elements having two different filtering media, were in public use and on sale in the United States more than one year prior to September 16, 1946. Two of these filter elements have been introduced into evidence by defendant.

Oral testimony is undisputed that elements, made with jute fibers at one end and cotton waste at the other, were made by the J. A. Baldwin Company for a long period. Although the use of jute, in addition to the cotton waste, was an expedient adopted by the J. A. Baldwin Company for its elements pending redesign of the filter housing and cover, it is clear that the dual-medium element was in open, commercial use by J. A. Baldwin Company, for a period of approximately two years. It was not a mere experimental use. See: Stearns v. Tinker & Rasor, 220 F.2d 49, 55 (9th Cir. 1955).

The remaining question, however, is whether the invention, disclosed by the claims of Patent No. 2,559,267, was embodied in the filters and elements manufactured and sold by the J. A. Baldwin Company from some time in 1937 until 1939 or 1940—about five years before the critical date of September 16, 1945.

The patent specifications refer to the two types of filters—full-flow and by-pass and recite that the principal object of the Winslow patent in suit is to eliminate or substantially reduce the by-passing of unfiltered oil around a filtering element. The patent (Col. 3, lines 14–24), which is not by its terms limited to a full-flow system, states:

"More specifically, it is an object of the invention to provide a filtering unit having two bodies of filtering material arranged in parallel in the fluid path through the unit, one of the filtering bodies being adapted to pass a substantial fraction of the fluid to be filtered while removing therefrom all particles larger than a predetermined size, and the other being adapted to pass the remainder of the fluid to be filtered while removing therefrom all particles down to a substantially smaller size."

Other recited objects of the invention and descriptions of the filtering means as such are set forth without distinction between full-flow or by-pass system.

Only one claim of the 8 claims of the patent—claim 2—completely defines a full-flow system incorporating a filtering means with two rates of flow. That claim 2 defines a full-flow system is indicated because a by-pass (valve) in one end of the housing is part of the claim. We shall hereinafter separately discuss claim 2.

None of the other claims, however, can be considered as defining a filter system other than a by-pass system because a by-pass valve is not part of the language of these claims.

The testimony of both plaintiffs' and defendants' experts is to the effect that a requirement of a full-flow system is a by-pass valve.

The evidence is clear and convincing that the filters and filter elements manufactured and sold by the J. A. Baldwin Company, during the period 1937–1939,

**52**

1940, did embody the invention claimed in claims 1 and 3 through 8. The Baldwin filters utilized two filtering media arranged in parallel. One of the filtering materials (jute) was relatively coarse, the other (cotton waste) was relatively fine. The testimony was clear that the two-medium elements were designed to and did provide a means for filtering oil in cold weather in the respect that the cold oil did tend to flow through the coarse filtering material.

Claim 1 defines a parallel flow filter element having coarse and fine filtering masses, specifically, that cold oil will tend to flow through the course, less resistant mass, and, after the oil has become warm, it will tend to flow through the finer filtering mass. As has been noted, the evidence clearly shows that this invention was embodied in the J. A. Baldwin Company filters on sale and in public use more than one year prior to September 16, 1946.

Claims 3, 4, 5, 6, 7, and 8 all recite, in somewhat different combinations, a filtering unit with filtering media having two flow rates, one filtering medium being coarse and the other fine, or some combination of coarse and fine filtering media.

This Court is convinced beyond reasonable doubt that the Baldwin filters and elements heretofore described in detail embody the invention defined by claims 3 through 8 of the Winslow patent.

This Court, therefore, finds and concludes that defendants have proven, by clear and convincing evidence, that the invention of claims 1, 3, 4, 5, 6, 7, and 8 was in public use and on sale within the United States more than one year prior to the date of the patent application. 35 U.S.C. Sec. 102(b).

The remaining question concerns claim 2, which, as has been noted, defines a full-flow filter system utilizing a filter element with filtering means having two flow rates, that is, two filtering media so disposed that the oil flow through the media is in parallel.

Pars. 6, 7, and 8 of the Agreed Facts clearly state that the full-flow system, itself, is old in the art. This was confirmed by testimony of one of the joint inventors, Winslow, and by Ex. 18, a patent of which Winslow is also a joint inventor. That Patent, No. 1,638,281, issued August 9, 1927, discloses and claims a full-flow filter system.

It follows that that part of claim 2 of the patent in suit which defines a full-flow system, is old in the art. It must be concluded that the only invention of claim 2 is the use of a filter element—consisting of two or more filtering media arranged so that there is parallel flow of the oil from the filter inlet to the filter outlet—in a full-flow filter system.

This combination of a dual-medium filter element, which the Court has concluded was in public use at least five years prior to the application for the patent in suit, with a filter system old in the art does not constitute invention, for it constitutes, at most, a purported improvement of one element of an old combination, performing no new result in combination. In Lincoln Engineering Co. v. Stewart-Warner Corp., 303 U.S. 545, 549–550, 58 S.Ct. 662, 664, 82 L.Ed. 1008 (1938) the Court held that "the improvement of one part of an old combination gives no right to claim that improvement in combination with other old parts which perform no new function in the combination."

In any event, the purported invention of claim 2—an aggregation of the old art of a full-flow filter with the dual-medium element, which itself was old in the art, (although Winslow and his co-inventors did not know of it), does not produce any new or useful results. The results obtained by this combination are no different from the results obtained in the same combination utilizing an element with only one filtering medium—except in the one respect that adding a coarser filtering medium obtains an oil flow in cold weather. If such was the purpose of claim 2 then all the inventor did was to utilize, in a full-flow system, the identical means used by Baldwin as

early as 1937 to accomplish the same purpose in a by-pass system.

The Baldwin D–7 filter used the dual media to permit cold oil to flow through the coarse medium and to thus relieve the pressure upon the filter cover. This is precisely the only result of the combination in claim 2—the relief of pressure upon the by-pass valve so that all the oil in the full-flow system will be filtered. The patent in suit does no more than place the "Baldwin" element in a full-flow system. It is, therefore, not invention. Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 71 S.Ct. 127, 95 L. Ed. 162 (1950).

For the foregoing reasons the Court finds and concludes that all the claims of the Winslow Patent No. 2,559,-267 are invalid as having been in public use more than one year prior to September 16, 1946. 35 U.S.C. Sec. 102(b).

Defendant will prepare, serve and lodge with the Court, proposed Findings of Fact, Conclusions of Law and a Judgment in accordance with this Memorandum of Decision.